# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BARBARA L. JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-231-FHS-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Barbara L. Jones requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 21, 1974, and was thirty-five years old at the time of the administrative hearing. She has a high school education and earned an associate's degree in criminal justice (Tr. 25). She has past relevant work as a correctional officer, office manager, and waitress (Tr. 19). The claimant alleges that she has been unable to work since August 12, 2008 because of depression, bipolar disorder, panic attacks, and anger disorder (Tr. 113).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on November 12, 2008. The Commissioner denied her application. ALJ Charles Headrick held an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 28, 2010. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but was limited to only simple tasks with minimal contact with the general public due to her mental impairments (Tr. 17). While the ALJ

concluded that the claimant was unable to return to her past relevant work, he also found that there was other work the claimant could perform in the national economy, *i. e.*, janitor, hand packer, bench assembler, and optical goods assembler (Tr. 20). Thus, the ALJ concluded that the claimant was not disabled at step five (Tr. 20).

## Review

The claimant contends that the ALJ erred by failing to properly analyze the treating physician opinion of Dr. Margaret Stripling, D.O. The undersigned Magistrate Judge agrees.

The claimant received mental health treatment at CREOKS starting in November 2007. In an assessment completed at that time, it was noted that she had been diagnosed as bipolar at age 15, and her problem areas were mood lability, coping skills, depression, anger, and anxiety (Tr. 210). Her initial treatment plan noted diagnoses of bipolar disorder, depressed, severe and generalized anxiety disorder and her GAF score was 55 (Tr. 220). The written notes reveal that claimant was seeking treatment for depression, anxiety, and anger and that she had been raped when she was sixteen (Tr. 221). The claimant began seeing Dr. Vanessa Werlla for individual counseling sessions in December 2007. The claimant stated during her first session that she had been having anxiety attacks three-four times per week and crying a couple times per week (Tr. 196). She described her panic attacks as episodes where it is difficult for her to breathe and her chest and throat tighten (Tr. 196). On March 26, 2008, the claimant reported that she was noticing aggression, not sleeping well, and having anxiety attacks (Tr. 199). The

claimant reported experiencing some highs and lows approximately four-five times per week (Tr. 200). The claimant's husband accompanied her during a session in May and reported that the claimant was screaming and raging at home, but the claimant also reported that her medications had helped with her sadness and crying spells (Tr. 201). A second treatment plan was completed on June 18, 2008, at which time it was noted that her "progress continue[s] to fluctuate" (Tr. 216). On February 2, 2009, the claimant reported mood swings and told Dr. Werlla that during the month she had times where she stayed in bed for two days at a time (Tr. 249). In addition, the claimant reported agitation and sleep disruption (Tr. 249).

Dr. Margaret Stripling was claimant's primary care physician starting in early 2007. Dr. Stripling noted that she was referring claimant to CREOKS for depression and anxiety on January 25, 2007. On April 24, 2008, Dr. Stripling's treatment notes reveal that the claimant's Xanax was working but that she was still experiencing heart palpitations during anxiety attacks (Tr. 187). Dr. Stripling completed a Mental Medical Source Statement on April 1, 2010 in which she wrote that claimant had bipolar disorder, social anxiety disorder and is manic depressive (Tr. 269). Dr. Stripling also noted that claimant would be unable to function in a work environment and her mild to moderate agoraphobia "makes even the idea of gainful employment fearful for her" (Tr. 269). Dr. Stripling found that claimant had severe limitations in the following areas: i) ability to work in coordination with or proximity to others without being distracted by them; ii) ability to complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; iii) ability to interact appropriately with the general public; iv) ability to accept instructions and respond appropriately to criticism from supervisors; v) ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; vi) ability to travel in unfamiliar places or use public transportation (Tr. 266-68). Further, Dr. Stripling found that claimant had marked limitations in the following areas: i) ability to carry out detailed instructions; ii) ability to maintain attention and concentration for extended periods; iii) ability to perform activities with an schedule, maintain regular attendance, and be punctual within customary tolerances; iv) ability to make simple work related decision; v) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; vi) ability to respond appropriately to changes in the work setting; and vii) ability to set realistic goals or make plans independently of others. Finally, Dr. Stripling opined that claimant had moderate limitations in following areas: i) ability to understand and remember detailed instructions; ii) ability to carry out very short and simple instructions; iii) ability to sustain an ordinary routine without special supervision; and iv) ability to ask simple questions or request assistance.

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v.*

*Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ mentioned Dr. Stripling's opinion and declined to give it controlling weight because Dr. Stripling "is not a mental health professional and [her opinion] is

inconsistent with the other substantial evidence as noted above" (Tr. 18). The ALJ also alluded to a finding that Dr. Stripling's opinion could be characterized as an administrative finding as opposed to an opinion on a medical issue (Tr. 18). The ALJ's analysis is flawed.

First, the ALJ erred because he failed to specify the weight he *was* assigning to the Dr. Stripling's treating physician opinion after he determined that it was not entitled to controlling weight. "Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011), *citing Watkins*, 350 F.3d at 1300-01. *See also* Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *4 ("Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.").

Next, the ALJ rejected Dr. Stripling's opinion because it was "inconsistent with the other substantial evidence of record" (Tr. 18). *See Langley*, 373 F.3d at 1119 (noting that medical opinions from a claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory

diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'"), *quoting Watkins*, 350 F.3d at 1300. "'Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence[,]'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007), *quoting Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995), but in order to discount the evidence, the ALJ must specify and explain what the inconsistencies in the evidence are. *See*, *e. g.*, *Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are.") [quotation marks and citations omitted] [unpublished opinion]; *Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300. Here, the ALJ failed to identify the evidence that was inconsistent with Dr. Stripling's opinion. Further, if the ALJ relied on the inconsistencies between Dr. Stripling's opinion and the opinions of the state reviewing physicians as the basis for her finding that Dr. Stripling's opinion was not entitled to controlling weight, the ALJ is required to explain why the opinions of reviewing physicians outweighed the opinion of the claimant's treating physician. *Warren v. Barnhart*, 2006 WL 4050700, at *7 (D. Kan. July 10, 2006) (remanding ALJ's decision because it "contain[ed] no analysis of the expert's medical opinion, evaluation of the opinion pursuant to the regulatory factors, or

explanation of how the expert's opinion outweigh[ed] that of the treating physician.") [unpublished opinion].

Finally, the ALJ's finding that Dr. Stripling's opinion was the equivalent of an administrative finding, *i. e.*, a residual functional capacity assessment, and never entitled to controlling weight under Soc. Sec. Ruling 96-5p is erroneous. Soc. Sec. Ruling 96-5p clearly defines medical source statements as "medical opinions submitted by acceptable medical sources . . . about what an individual can still do despite a severe impairment[s], in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." Soc. Sec. Ruling 96-5p, *4. Further, Soc. Sec. Ruling 96-5p goes on to state that "a medical source statement must not be equated with the administrative finding known as the RFC assessment" and stresses that "[a]lthough the overall RFC assessment is an administrative finding on an issue reserved to the Commissioner, the adjudicator must nevertheless adopt in that assessment any treating source medical opinion . . . to which the adjudicator has given controlling weight[.]" *Id.* at *5. Dr. Stripling did not give any opinion on the claimant's RFC. Instead, she opined on the severity of claimant's mental health impairments with respect to work-related limitations. And while a medical source statement regarding "work-related limitations would, if accepted, impact the ALJ's determination of RFC . . . that does not make the medical findings an impermissible opinion on RFC itself." *Krauser*, 638 F.3d at 1332. Indeed, "[i]f doctors could only give opinions on matters that could not affect RFC, medical opinions would be inherently useless in disability determinations." *Id.*

Because the ALJ failed to properly analyze the treating physician opinion of Dr. Margaret Stripling, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the medical evidence or record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma